IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WUANERGE ALBERTO-ALVARENGA, | ) | CASE NO.  3:25-CV-02644-JRK |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES R. KNEPP, II |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| RICHARD A. AUMILLE, IN HIS | ) | MAGISTRATE JUDGE |
| OFFICIAL CAPACITY AS WARDEN OF | ) | JONATHAN D. GREENBERG |
| SENECA COUNTY JAIL, *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Wuanerge Alberto-Alvarenga ("Alberto-Alvarenga" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and the Answer/Return of Writ and Motion to Dismiss (Doc. No. 6.).  Also pending is Petitioner's Motion for Leave to File Sur-Reply (Doc. No. 12), Motion to Expedite and for Immediate Ruling (Doc. No. 13), and Motion to Substitute Proper Respondent (Doc. No. 15). Petitioner is being held in the custody of the Detroit Field Office of U.S. Immigration and Customs Enforcement ("ICE") at the Northeast Ohio Correctional Center.   (Doc. No. 15 at 2; Doc. No. 17 at 2-3.)

For the following reasons, the undersigned recommends that the Court GRANT the Motion to Substitute Proper Respondent (Doc. No. 15).  The undersigned further recommends that the Court GRANT Alberto-Alvarenga's Petition and ORDER Respondents to provide Alberto-Alvarenga with a bond hearing under 8. U.S.C. § 1226(a).  Petitioner's Motion for Leave to File Sur-Reply (Doc. No. 12) is DENIED. Petitioner's Motion to Expedite and for Immediate Ruling (Doc. No. 13) is DENIED AS MOOT.

1

## I.    Factual Background[1]

Alberto-Alvarenga "fled Honduras in 2016 after being violently attacked and threatened with death by armed gang members following his refusal to join them." (Doc. No. 5 at 2.)  He entered the United States in Texas on or about August 1, 2016.  (Doc. No. 1-8 at 6.)

On August 3, 2016, a Border Patrol agent issued Alberto-Alvarenga a Notice to Appear, presumably placing him in immigration removal proceedings, and released him.[2]  (*Id.*)  The Notice to Appear did not allege that Alberto-Alvarenga was an arriving alien.  (*Id.*)  Rather, it alleged that he was "an alien present in the United States who ha[d] not been admitted or paroled."  (*Id.*)  The Notice to Appear alleged that Alberto-Alvarenga was subject to removal from the United States pursuant to "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  (*Id.*)  The Notice to Appear informed Alberto-Alvarenga that he was ordered to appear before an immigration judge ("IJ") "AT A PLACE TO BE SET' on "a date to be set" and at a "time to be set" to show why he should not be removed from the United States based on the details set forth in the Notice to Appear.  (*Id.*)

In April 2017, Alberto-Alvarenga "filed an affirmative asylum application, which has never been adjudicated on the merits." (Doc. No. 5 at 2.)

On October 4, 2024, the Columbus Division of Police investigated an alleged domestic violence incident.  (Doc. No. 1-3.)  The Preliminary Investigation Report prepared by the Columbus Division of Police shows that officers used a "Spanish language line interpreter" to communicate with the victim.  (*Id.*

---

[1] "[D]ocuments attached to the pleadings become part of the pleadings and may be considered" by the Court on a motion to dismiss.  *Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007)).
[2] A comprehensive statement of facts setting forth the relevant details regarding Alberto-Alvarenga's immigration history and proceedings would have made the Court's review of the Petition much easier.

at 2.)  The victim reported Alberto-Alvarenga had been drinking earlier that evening and had pushed her down the stairs, and she had hit her head as a result.  (*Id.*)  Officers noted they did not observe any injuries on the victim.  (*Id.*)  The victim told officers that Alberto-Alvarenga had fled after realizing the victim had called the police.  (*Id.* at 3.)  The victim feared what Alberto-Alvarenga would do to her for calling the police, and informed officers she was leaving to stay with a friend.  (*Id.*)  The victim gave officers a written statement of events.  (*Id.*)  Officers filed Domestic Violence and Assault warrants for Alberto-Alvarenga. (*Id.*)

On December 4, 2024, the U.S. Dept. of Homeland Security ("DHS") "conducted IDENT/NGI biometric screening" and issued Alberto-Alvarenga an Employment Authorization Document that was valid through December 3, 2029.  (Doc. No. 1 at 4; Doc. No. 1-7.)

On October 4, 2025, Franklin County police arrested Alberto-Alvarenga in connection with the October 2024 alleged domestic violence incident.  (Doc. No. 1-8 at 22.)  When Alberto-Alvarenga appeared before the Franklin County Municipal Court for his hearing, he was "apprehended by Immigration and Customs Enforcement (ICE) and taken into custody at the detention facility in Tiffin, Ohio…."  (*Id.*)

On October 6, 2025, a Border Patrol agent issued Alberto-Alvarenga a Notice to Appear.  (Doc. No. 1-8 at 2.)  The Notice to Appear did not allege that Alberto-Alvarenga was an arriving alien.  (*Id.*)  Rather, it alleged that he was "an alien present in the United States who ha[d] not been admitted or paroled."  (*Id.*) The Notice to Appear alleged that Alberto-Alvarenga was subject to removal from the United States pursuant to "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," as well as "212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or

3

other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act." (*Id.* at 5.)  The Notice to Appear informed Alberto-Alvarenga that he was ordered to appear before an IJ in Cleveland, Ohio on November 18, 2025, at 8:30 a.m. (*Id.* at 2.)

On October 13, 2025, the victim signed a "Statement of Intent to Withdraw Domestic Violence Charges and Support for Custody Redetermination" in support of Alberto-Alvarenga's bond request.[3] (Doc. No. 1-2 at 2-3.)  The victim represented that the October 2024 "domestic dispute" resulted from "a misunderstanding and a moment of heightened emotions." (*Id.* at 2.)  The victim stated that the incident "did not involve serious violence or injuries," and "[a]t no point" did she feel that her "life or safety were in danger." (*Id.*)

On November 4, 2025, Alberto-Alvarenga withdrew his bond request before the IJ. (Doc. No. 6-6 at 1.)

On December 29, 2025, the IJ granted DHS' unopposed motion to pretermit and deny without hearing Alberto-Alvarenga's asylum application due to his failure to establish *prima facie* eligibility for relief.[4] (Doc. No. 6-1.)  The IJ issued an order of removal the same day. (Doc. No. 6-2.)

On January 2, 2026, the IJ reissued the order of removal to indicate that the respondent reserved his right to appeal. (Doc. No. 6-3.)

---

[3] The Court notes that, at least as of October 13, 2025, Alberto-Alvarenga was being detained by ICE at Seneca County Detention Center in Tiffin, Ohio. (Doc. No. 1-2 at 2.)

[4] Respondent argues that "[a]ttaching documents from Petitioner's removal proceedings does not convert the instant Response in Opposition into a motion for summary judgment, since the removal proceedings are described and referenced in Petitioner's filings and are central to his claims. (*See* Pet., ECF No. 1, PageID #6-8; *see also* TRO, ECF No. 5, PageID #98-99); *Shoemake v. Mansfield City Sch. Dist. Bd. of Educ.*, 61 F.Supp.3d 704, 711 (N.D. Ohio 2014) (court may consider exhibits attached to a motion to dismiss, as long as they are referred to in the complaint and are central to the plaintiff's claims), (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001))." (Doc. No. 6 at 3 n.2.)

That same day, Alberto-Alvarenga filed an "Emergency Motion to Reconsider and Vacate Summary Order of Deportation and for Administrative Stay." (Doc. No. 6-4.) Alberto-Alvarenga argued that "[t]hese determinations were entered without affording Respondent a meaningful opportunity to be heard, without the presentation of evidence in open court, and in contravention of fundamental due process protections guaranteed by statute, regulation, and the Fifth Amendment." (*Id.* at 2.) Alberto-Alvarenga also informed the IJ of the federal habeas petition pending before this Court. (*Id.* at 3-4.)

On January 9, 2026, the IJ denied the motion to reconsider. (Doc. No. 6-5.) The IJ found that Alberto-Alvarenga's claims of a denial of due process and defective proceedings were "meritless," as Alberto-Alvarenga had had ten days to file a response to DHS' Motion to Pretermit, which he did not do, and the IJ did not issue a ruling until eighteen days after Alberto-Alvarenga's response was due. (*Id.* at 1.) In addition, the IJ noted that Alberto-Alvarenga's Motion to Reconsider failed to address the IJ's finding that the evidence did not establish a *prima facie* claim for relief. (*Id.*)

On January 23, 2026, Alberto-Alvarenga filed a "Notice of Intervening BIA Emergency Appeal and Status of Habeas Proceedings (Informational Filing)," informing the Court that "[o]n January 20, 2026, Petitioner filed a Corrected Emergency Appeal and Motion for Stay of Removal with the Board of Immigration Appeals ('BIA'), curing a prior ministerial defect and requesting immediate administrative stay and review of the Immigration Judge's summary removal order entered on January 2, 2026." (Doc. No. 7 at 2.) Alberto-Alvarenga stated that as of January 23, 2026, the BIA appeal remained pending. (*Id.*)

## II.     Federal Habeas Petition

On December 5, 2025, Alberto-Alvarenga filed his federal habeas petition. (Doc. No. 1.)

The Court issued an expedited briefing schedule on December 11, 2025. (Doc. No. 4.)

On January 5, 2026, Alberto-Alvarenga filed an Emergency Motion for Temporary Restraining Order and Enjoining Removal. (Doc. No. 5.)

5

On January 8, 2026, the Court held a telephone conference regarding Alberto-Alvarenga's Motion for Temporary Restraining Order and Enjoining Removal.  (Non-document Order dated January 8, 2026.) For the reasons set forth on the record, the Court denied the Motion for Temporary Restraining Order and Enjoining Removal.  (*Id.*)

On January 12, 2026, Respondents[5] filed a Return of Writ/Response in Opposition to Petition and Motion to Dismiss.  (Doc. No. 6.)

On January 23, 2026, Alberto-Alvarenga filed a "Notice of Intervening BIA Emergency Appeal and Status of Habeas Proceedings (Informational Filing)."  (Doc. No. 7.)

That same day, Alberto-Alvarenga filed a Motion for Status Conference or, in the Alternative, Expedited Briefing.  (Doc. No. 8.)  Alberto-Alvarenga also filed a Supplemental Memorandum in Support of Petition for Writ of Habeas Corpus.  (Doc. No. 9.)

On January 27, 2026, the Court denied Alberto-Alvarenga's Motion for Status Conference or, in the Alternative, Expedited Briefing.  (Non-document Order dated January 27, 2026.)  The Court stated that it had already ordered expedited briefing in this case, and that Respondents had filed the Return of Writ on January 12, 2026.  (*Id.*)  The Court encouraged Alberto-Alvarenga's counsel to review the docket prior to filing motions in this case.  (*Id.*)

On January 28, 2026, Alberto-Alvarenga filed his Expedited Traverse and Opposition to Respondent's Motion to Dismiss (Return of Writ).  (Doc. No. 10.)

---

[5] The Return of Writ/Response in Opposition to Petition and Motion to Dismiss was "filed on behalf of Respondents Pamela Bondi, Attorney General of the United States, Kristi Noem, Secretary of the Department of Homeland Security, and Rodney S. Scott, Commissioner of U.S. Customs and Border Protection, who are automatically substituted as parties pursuant to Fed. R. Civ. P. 25(d)."  (Doc. No. 6 at 2 n.1.)  Respondents assert that "[t]he Office of the United States Attorney may make appearances in court to attend to the United States' interests, pursuant to 28 U.S.C. § 517, and consistent with that statute, this response attends to the United States' interests to the extent that the Petition names Richard A. Aumille, the Seneca County Jailer, as a respondent."  (*Id.*)

6

On February 3, 2026, Respondents filed a reply to the Traverse.  (Doc. No. 11.)

On February 5, 2026, Alberto-Alvarenga filed a Motion for Leave to File Sur-reply to Reply to Traverse (Doc. No. 12) and a Motion to Expedite and for Immediate Ruling (Doc. No. 13).

That same day, Alberto-Alvarenga filed a Motion to Substitute Proper Respondent.  (Doc. No. 15.)

On February 6, 2026, the Court ordered that any response to the pending Motion to Substitute Proper Respondent must be filed by close of business (5:00 p.m.) on February 12, 2026.  (Non-document Order dated February 6, 2026.)

On February 12, 2026, Respondents filed a response in opposition to the Motion to Substitute Proper Respondent.  (Doc. No. 16.)

That same day, the Court ordered that any reply in support of the pending Motion to Substitute Proper Respondent must be filed by close of business (5:00 p.m.) on February 17, 2026.  (Non-document Order dated February 12, 2026.)

On February 16, 2026, Alberto-Alvarenga filed his reply in support of the pending Motion to Substitute Proper Respondent.  (Doc. No. 17.)

## II. Law and Analysis

## A.     Personal Jurisdiction

Respondents argue that this Court lacks personal jurisdiction over the proper respondent.  (Doc. No. 6 at 6.)  Respondents assert that "the only proper respondent" in this case is Kevin Raycraft, the current Director of the ICE Detroit Field Office, as the ICE Detroit Field Office is responsible for the state of Ohio. (*Id.* at 6-7.)  Citing *Purley v. Toledo Federal Court*, Case No. 3:24-CV-01211, 2025 WL 240737, at *5 (N.D. Ohio Jan. 17, 2025), Respondents argue that this Court lacks personal jurisdiction over Director Raycraft and therefore the Petition "should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(2)."  (Doc. No. 6 at 7.)

7

In his Traverse, Alberto-Alvarenga states that, "[t]o the extent substitution of the current ICE custodian is appropriate, Petitioner does not oppose substitution pursuant to Federal Rule of Civil Procedure 25(d)." (Doc. No. 10 at 3.) Alberto-Alvarenga argues that dismissal of the Petition "is neither required nor appropriate." (*Id.*)

In their response to the Traverse, Respondents assert that Rule 25(d) "applies to public officials and is not applicable in this instance," as Alberto-Alvarenga "failed to name anyone who was formerly over the ICE Detroit Field Office"; instead, Respondents argue, Alberto-Alvarenga "named the non-existent 'Sean G. Smith, Ohio Field Office Director.'" (Doc. No. 11 at 9.) As a result, Respondents maintain that the Court lacks personal jurisdiction and the Petition "may be dismissed pursuant to Fed. R. Civ. P. 12(b)(2)." (*Id.*)

As set forth above, Alberto-Alvarenga then filed a Motion to Substitute Proper Respondent, but instead of moving to substitute Director Raycraft, he moved to substitute Kenneth Hoover, Warden of Northeast Ohio Correctional Center. (Doc. No. 15 at 2.) Alberto-Alvarenga states that he was transferred to Northeast Ohio Correctional Center after the filing of the Petition. (*Id.*) Alberto-Alvarenga represents that because Respondents moved to dismiss the Petition for lack of personal jurisdiction, "[i] an abundance of caution, and to ensure that the proper custodian is before the Court for purposes of habeas jurisdiction and any relief ordered, Petitioner respectfully requests substitution of the correct current warden." (*Id.* at 3.)

In their opposition to the Motion to Substitute Proper Respondent, Respondents argue that "substituting the warden" fails to solve the problem; "[a]ssuming, *arguendo*, this Court has jurisdiction over the Petition to order substitution of the proper Respondent, the warden is not that person." (Doc. No. 16 at 1.) Respondents assert that Rule 25(d)'s automatic substitution does not apply, as "nothing in Rule 25(d) suggests it applies to wardens of correctional facilities." (*Id.* at 2.) In addition, Respondents maintain that

8

Rule 25(d) "necessitates that the correct predecessor be named on the complaint, before automatic substitution applies." (*Id.*)  Here, Alberto-Alvarenga named "Sean G. Smith, Ohio Field Office Director," and ICE agency counsel has "no record of a 'Director Smith' and do not know who this refers to.'" (*Id.*) "Therefore, even if Petitioner was requesting to substitute the correct Director of the ICE Field Office in Detroit, Kevin Raycraft, Rule 25(d) would not apply because Petitioner did not name Raycraft's predecessor and that person was not the Director when the Petition was filed." (*Id.* at 3.)

In his reply in support of the Motion to Substitute Proper Respondent, Alberto-Alvarenga "also moves, in the alternative, for leave to amend the caption and/or substitute the proper respondent pursuant to Federal Rules of Civil Procedure 15 and 21, and applicable habeas principles." (Doc. No. 17 at 2.)  Alberto-Alvarenga argues that "[d]ismissal on technical grounds would be inconsistent with judicial economy and the equitable nature of habeas corpus, particularly where Respondents have now clearly identified the individual they contend is the proper custodian and where Petitioner seeks only to ensure that the Court can grant effective relief."[6] (*Id.*)  Alberto-Alvarenga asserts that "[e]ven assuming arguendo that Rule 25(d) is not applicable in the manner Petitioner originally cited," dismissal is not warranted, as the Court "retains authority" under Rule 15(a) to allow amendment of the pleadings "'when justice so requires,'" and under Rule 21 "to add or drop parties 'at any time, on just terms.'" (*Id.* at 4.)

The law requires that a district court shall direct a writ of habeas corpus "to the person having custody of the person detained." 28 U.S.C. § 2243; *see Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003) (citing *Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484, 494–95, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.").

---

[6] Contrary to Alberto-Alvarenga's statement, Respondents have consistently identified Director Raycraft as the proper respondent since filing the Return of Writ/Motion to Dismiss.  (Doc. No. 6 at 6-7.)

9

The Sixth Circuit noted that, historically, "the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner and ... on the convenience of the parties and the court." *Roman*, 340 F.3d at 319 (citing *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999)). The "general rule" requires a petitioner to name "the individual having day-to-day control over the facility in which [the petitioner] is being detained" as a respondent to his habeas corpus petition.  *Id.* (citing *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000), *cert. denied*, 534 U.S. 816, 122 S.Ct. 43, 151 L.Ed.2d 15 (2001)). This is known as the "immediate custodian rule."  *Id.*

The question for an alien held in a state or county prison under an agreement with ICE is whether their "immediate custodian" is the warden of the facility where the alien is detained or the ICE District Director of the district where the alien is being detained.  *Id.* at 320. The Sixth Circuit addressed this issue in *Roman*.  After considering the various ways in which other courts handled this issue, they concluded that "although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners," and is the proper respondent to a habeas petition by an alien in ICE custody.  *Id.* (citing *Henderson*, 157 F.3d at 122); *see also Orozco-Valenzuela v. Holder*, No. 1:14 CV 1669, 2015 WL 1530631, at *4 (N.D. Ohio Apr. 6, 2015) (Field Office Director of the Detroit Field Office of ICE is the proper respondent for a habeas petition brought by an alien in ICE custody at detention facilities in Ohio); *Khodr v. Adducci*, 697 F. Supp. 2d 774, 776 (E.D. Mich. 2010) ("The Court will follow appropriate Sixth Circuit authority and find the ICE District Director is the proper party to be sued in the habeas case here.").

As the Eastern District of Michigan recently noted, "federal courts in both Michigan districts (*not to mention the federal courts in Ohio*) would have jurisdiction over the ICE regional director…."  *Cid-Barrios v. Raycraft*, Case No. 25-13630, --- F. Supp. 3d ---, 2025 WL 3724377, at *6 (E.D. Mich Dec. 24, 2025)

(emphasis added).  Indeed, Director Raycraft has been, and is, a defendant in many cases before this Court. *See, e.g., Gonzalez Lopez v. Raycraft*, Case No. 4:25CV2449, 2025 WL 3280344, at *1 n.1. (N.D. Ohio Nov. 25, 2025).  This Court's decision in *Purley* does not change the Court's jurisdiction over Director Raycraft; that decision addressed the question of the proper respondent "when a petitioner is confined outside of prison—e.g., in home confinement or in an RRC…."[7]  2025 WL 240737 at *3.

Even if Rule 25(d) does not apply where, as here, an incorrect (or nonexistent) official was named in the first place, Rules 15 and 21 allow for addition of parties to civil actions.  "While '[t]his Circuit has not determined whether Rule 21 or Rule 15 controls the amendment of a pleading where the amendment seeks to add parties to the action,' the distinction here is moot as Rule 21 considers the same factors as Rule 15 of prejudice and fairness. *Broyles v. Corr. Med. Servs.*, No. 08-1638, 2009 WL 3154241, at *——, 2009 U.S. App. LEXIS 5494 (6th Cir. Jan. 23, 2009)."  *7D Holdings, LLC v. JAWK Holdings LLC*, CIVIL ACTION NO. 1:24-CV-00033-GNS-HBB, 2024 WL 5056637, at *4 (W.D. Ky. Dec. 10, 2024).  In the interest of fairness, and in the absence of any undue prejudice to the opposing parties, the undersigned recommends that Director Raycraft be added as a party to this action.

**B.     Exhaustion**

Respondents argue that Alberto-Alvarenga "failed to exhaust his administrative remedies provided through the removal process" and therefore fails to state a claim.  (Doc. No. 6 at 10.)  While Respondents acknowledge that exhaustion is discretionary, Respondents assert that "[j]udges in the Northern District of Ohio have dismissed similar habeas petitions for failure to exhaust administrative remedies."  (*Id.*) (citing *Hernandez Torrealba v. Dept. of Homeland Security*, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025); *Monroy Villalta v. Greene,* 794 F. Supp. 3d 528, 530 (N.D. Ohio Aug. 5, 2025); *Laguna Espinoza v. Director*

---

[7] The Court notes that counsel for Respondents was counsel for the respondents in *Purley*.  2025 WL 240737 at *1.

*of Detroit Field Office, U.S. Immigration and Customs Enforcement*, Case No. 4:25-cv-02107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025)).  Respondents maintain that Alberto-Alvarenga "failed to exhaust his administrative remedies on bond when he withdrew his request for bond" and he had until February 2, 2026 to appeal the IJ's removal order.  (Doc. No. 6 at 11.)  Respondents argue Alberto-Alvarenga "should be required to avail himself of that process" and his Petition should be dismissed.  (*Id.*)

Alberto-Alvarenga responds that "[c]ourts may excuse exhaustion where constitutional claims are raised, further administrative review would be futile, or irreparable harm is ongoing," all of which he asserts are present in his case. (Doc. No. 10 at 3.)  Alberto-Alvarenga argues that the withdrawal of his bond request before the IJ "does not waive the right to challenge continued detention on constitutional grounds" and asserts that this Court's habeas review "concerns present custody, not procedural history in immigration court." (*Id.* at 4.)  Alberto-Alvarenga maintains that "the pendency of a BIA appeal does not strip this Court of jurisdiction to consider the constitutionality of ongoing detention." (*Id.*)

In their reply to the Traverse, Respondents argue that "[a]s recently held in this District, neither Petitioner's likelihood of success at the administrative level, nor the fact that Petitioner is detained, has any bearing on the exhaustion analysis." (Doc. No. 11 at 7) (citing *Hernandez Torrealba*, 2025 WL 2444114). Respondents assert that "[w]ithout alleging an attempt or effort to request a bond hearing before the immigration court, or an appeal to the BIA of an adverse ruling denying the hearing, or denying bond upon hearing, Petitioner fails to show that he has 'diligently pursued his administrative remedies.'" (*Id.* at 8) (quoting *Alonso-Portillo v. Bondi*, Case No. 1:25-cv-306, 2025 WL 2483393, at *6 (S.D. Ohio Aug. 28, 2025)).  Respondents maintain that Alberto-Alvarenga's "failure to request a bond hearing before the immigration court counsels against excusing exhaustion," as it would "encourage[] the deliberate bypass of the entire administrative scheme," as Alberto-Alvarenga did here.  (*Id.*)

12

"[T]he Sixth Circuit has not yet decided whether courts should impose prudential exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Ramirez Moreno v. Lynch*, Case No. 4:26 CV 275, 2026 WL 496634, at \*2 (N.D. Ohio Feb. 23, 2026) (citations omitted). "Without guidance, the courts in this circuit have largely applied Ninth Circuit precedent but have reeached conflicting results. *Compare Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (N.D. Ohio 2025) ('Here, all three [Ninth Circuit] factors weigh against requiring exhaustion.'), *with Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 531 (N.D. Ohio 2025) (dismissing petition for failing to exhaust available administrative remedies)." *Ramirez Moreno*, 2026 WL 496634, at \*2.

On November 25, 2025, this Court rejected similar arguments raised by respondents regarding the need for exhaustion of administrative remedies as follows:

> There is no statute that requires Petitioner to administratively exhaust his claims. "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). But when it is not mandated, the decision to require exhaustion is within the sound discretion of the court. *Id.*; *see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). Exhaustion requirements not written into the text of the statute are prudential. *See Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994). Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).
>
> "The Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, --- F. Supp.3d ----, No. 2:25-cv-12486, 2025 WL 2496379, at \*4 (E.D. Mich. Aug. 29, 2025). Some district courts in the Sixth Circuit have adopted the three-factor test set forth by the Ninth Circuit in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), and have thus required prudential exhaustion when,
>
> > 1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> >
> > (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> >
> > (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

13

*Diego v. Raycraft*, No. 25-13288, 2025 WL 3159106, at *3 (E.D. Mich. Nov. 12, 2025) (citing *Lopez-Campos*, 2025 WL 2496379, at *4 (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015))). Here, all three factors weigh against requiring administrative exhaustion, and other district courts in the Sixth Circuit have concurred in cases with identical legal considerations. *See Diego*, 2025 WL 3159106, at *4.

First, the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record. Second, because Petitioner's habeas petition includes a due process claim, the administrative scheme (*i.e.* appeal to the BIA) is likely futile. And third, administrative review is not likely to change Respondents' position that § 1225(b)(2)(A) applies in this context. As such, requiring Petitioner to go through the administrative process would be fruitless and a waste of time.

Even if these factors weighed in favor of requiring administrative exhaustion, the Court may still waive administrative exhaustion "when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks," or when "delay means hardship." *Lopez-Campos*, 2025 WL 2496379, at *4. Respondents explicitly acknowledge that futility is applicable in this case. *See* ECF No. 4 at PageID #: 42-43.

Petitioner is unlikely to obtain the relief he seeks through the administrative process given Respondents' position in the case at bar and the BIA's recent decision in *Yajure Hurtado*, *supra*, which is binding on the agency and the immigration courts, and which conclusively rejects Petitioner's arguments in this case. *See Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981) (recognizing that administrative exhaustion may be excused if it would be futile); *Contreras-Lomeli v. Raycraft*, No. 2:25-cv-12826, 2025 WL 2976739, at *4 (E.D. Mich. Oct. 21, 2025) ("Waiver based on futility is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought.") (quoting *Cooper v. Zych*, No. 09-CV-11620, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009)).

Second, requiring administrative exhaustion would subject Petitioner to hardship. "Bond appeals before the BIA, on average, take six months or more to complete." *Lopez-Campos*, 2025 WL 2496379, at *5 (citing *Rodriguez v. Bostock*, 779 F. Supp.3d 1239, 1245 (W.D. Wash. 2025) Requiring Petitioner to remain in custody for that period of time "'would result in the very harm that the bond hearing was designed to prevent,' that is, prolonged detention without due process." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (quoting *Hechavarria v. Whitaker*, 358 F. Supp.3d 227, 237 (W.D.N.Y. 2019)).

14

> Third, "the Sixth Circuit has also previously held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges." *Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at *6 (E.D. Mich. Oct. 17, 2025) (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted)).
>
> As explained above, it is clear that administrative exhaustion should be waived in this case. Accordingly, the Court waives Petitioner's exhaustion requirements.

*Gonzalez Lopez*, 2025 WL 3280344, at **2-4.  *See also Ramirez Moreno*, 2026 WL 496634, at **2-3 (finding prudential exhaustion not required).

The Court acknowledges that, unlike the petitioner in *Gonzalez Lopez*, Alberto-Alvarenga withdrew his bond request before the immigration court.  In addition, unlike the respondents in *Gonzalez Lopez*, Respondents have not "explicitly acknowledge[d] that futility is applicable in this case."  However, on balance, the Court finds that the grounds for the Court's reasoning in waiving the exhaustion requirements in *Gonzalez Lopez* apply here.

Like the petitioner in *Gonzalez Lopez*, Alberto-Alvarenga raised a due process claim in his habeas petition. (Doc. No. 1.)  Alberto-Alvarenga's argument that the withdrawal of his bond request before the IJ "does not waive the right to challenge continued detention on constitutional grounds" is well-taken given the facts of this case.  Alberto-Alvarenga withdrew his bond request on November 4, 2025 before the IJ. (Doc. No. 6-6.)  An individual merits hearing before the IJ was scheduled for January 8, 2026.  (Doc. No. 6-4.) The individual merits hearing did not go forward, as the IJ granted DHS' motion to pretermit on December 29, 2025.  (Doc. No. 6-1.)  Therefore, the Court cannot say that Alberto-Alvarenga's withdrawal of his bond request in November 2025 forecloses his ability to challenge his continued detention.

15

Like the respondents in *Gonzalez Lopez*, Respondents argue that mandatory detention under § 1225(b) applies in this context.  (Doc. No. 11 at 2.)  As such, requiring Alberto-Alvarenga to go through the administrative process would be fruitless and a waste of time.

Furthermore, even if these factors weighed in favor of exhaustion, the Court agrees with the Court's reasoning in *Gonzalez Lopez* and *Ramirez Moreno* that, given the facts of this case, administrative exhaustion should be waived.

## C.  Subject Matter Jurisdiction

Citing this Court's decision in *Munoz Nataren v. Raycraft*, Case No. 4:26-cv-212, 2026 WL 214368, at *2 (N.D. Ohio Jan. 28, 2026), Respondents argue that "this Court lacks jurisdiction to interpret or apply § § 1225 or 1226."  (Doc. No. 11 at 2.)  According to Respondents, under 8 U.S.C. § 1252(g), "the district court does not have jurisdiction to release Petitioner nor review the decision to detain."  (*Id.* at 3.)

First, Respondents' reliance on *Munoz Nataren* is misplaced, as it is distinguishable on its face.  The Court in *Munoz Nataren* recognized that "Section 1252 preserves the ability of district courts to review a petition for a writ of habeas corpus regarding a constitutional issue"; "[f]or example, such claims might challenge the conditions of confinement **or what amounts to indefinite detention**. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (recognizing the serious constitutional concerns of indefinite detention following a final order of removal); *but see Jennings*, 583 U.S. at 297 (finding no statutory right to periodic bond hearings for aliens detained during the pendency of removal proceedings)."  2026 WL 214368 at *3 (emphasis added).  The *Munoz Nataren* Court noted that the petitioner in that case was *not* raising such a claim.  *Id.*  In contrast, Alberto-Alvarenga cites *Zadvydas*, as well as *Jennings*, *Demore v. Kim*, 538 U.S. 510 (2003), and *Clark v. Martinez*, 543 U.S. 371 (2005), in arguing that his detention "is now prolonged, unreasonable, and unconstitutional."  (Doc. No. 1 at 4.)

16

Second, other opinions from this Court reject Respondents' arguments. In *Zhen v. Doe*, this Court explained as follows:

> "In the REAL ID Act, Congress sought to channel judicial review of an alien's claims related to his or her final order of removal through a petition for review at the court of appeals." *Elgharib v. Napolitano*, 600 F.3d 597, 600 (6th Cir. 2010); *see also Rranxburgaj v. Wolf*, 825 Fed. App'x. 278, 280–81 (6th Cir. 2020). Congress thus provided in 8 U.S.C. § 1252(g), "Exclusive jurisdiction," that:
>
> > "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."
>
> § 1252(g). Courts have routinely found that § 1252(g) deprives district courts of subject-matter jurisdiction over constitutional challenges to final orders of removal. *See, e.g.*, *Elgharib*, 600 F.3d at 606; *Rranxburgaj*, 825 Fed. App'x. at 282.
>
> Notwithstanding the above, the Sixth Circuit has drawn a distinction where a petitioner brings a claim challenging his detention as opposed to his removal. *See Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018). In such cases, "the district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims." *Id.*; *Karki*, 2025 WL 1638070, at *8. Accordingly, if a petitioner "raise[s] a challenge that [does] not require the district court to address the merits of her order of removal," Sixth Circuit precedent indicates that jurisdiction is not precluded by § 1252(g).[4] *Elgharib*, 600 F.3d at 605; *see also Xie Deng Chen v. Barr*, 2021 WL 2255873, at *1–2 (N.D. Ohio Feb. 5, 2021) ("[Courts] have jurisdiction over Section 2241 habeas corpus petitions so long as the petitioner's claim arises out of immigration detention and concerns constitutional or statutory issues … Because [Petitioner] challenges the duration of his detention as unconstitutional, but does not challenge the merits of his removal order here, the District Court has jurisdiction.").
>
> The Court finds that subject-matter jurisdiction exists in this matter. Here, Zhen concedes that she is "not challenging the validity of her removal order" or "DHS's authority to remove her." (Doc. No. 6 at PageID #79.) Instead, Zhen merely challenges her current detention while she *awaits* removal, raising numerous arguments why her detention *itself* is unlawful. (*See id.* at PageID #79– 82.) This is precisely the sort of detention-based claim that falls outside the purview of § 1252(g). *See Karki*, 2025 WL 1638070, at *8 (citing cases);

17

*cf. El Moustrah v. Barr*, 2020 WL 1473305, at \*2 (E.D. Mich. Mar. 25, 2020) (suggesting that jurisdiction could exist where petitioner "argu[es] that he only challeng[es] his detention, not his removal" but ultimately finding no jurisdiction because "Petitioner ha[d] not argued that his detention is illegal in itself"). Accordingly, the Court concludes that subject-matter jurisdiction exists and will proceed to the merits of Zhen's Petition.

Case No. 3:25-cv-01507-PAB, --- F. Supp. 3d. ---, 2025 WL 2258586, at \*\*3-4 (N.D. Ohio Aug. 7, 2025)

(emphasis in original).

More recently, this Court rejected Respondents' jurisdictional arguments in *Singh v. Stevens* as follows:

> The Government begins, as it has in numerous prior habeas challenges from noncitizens in ICE custody, by insisting the Court lacks jurisdiction pursuant to 8 U.S.C. §§ 1252(b)(9) and (g). ECF No. 8 at PageID ##: 57–59. As the Court (and many other courts around the country) has articulated, the Government is mistaken.
>
> First, the Government misapprehends § 1252(g) to bar judicial review of "*any* cause or claim by or on behalf of any alien *arising from* the decision or action ... to *commence proceedings*, adjudicate cases, or execute removal orders against any alien." ECF No. 8 at PageID #: 57 (original emphasis). The Supreme Court "rejected as implausible" any claim that § 1252(g) bars judicial review over "all claims arising from deportation proceedings." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19, 140 S.Ct. 1891, 207 L.Ed.2d 353 (2020). Section 1252(g) applies only to the three categories enumerated therein: the commencement, adjudication, and execution of removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). Claims that do not seek "review of an order of removal, the decision to seek removal, or the process by which removability will be determined" are not barred by § 1252(g). *Regents of Univ. of Cal.*, 591 U.S. at 19, 140 S.Ct. 1891; *see Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) (A "district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims."). **Accordingly, detention-based challenges—as in the case at bar—which do not require the Court to address the merits of a removal order are not barred by § 1252(g).** *Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010).
>
> **Respondents' § 1252(b)(9) argument is equally unavailing.** Under that provision, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien ... shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). The

18

> question of whether statutory provisions require detention without a hearing does not "arise from" actions taken to remove noncitizens. *Ochoa Ochoa v. Noem*, No. 25-CV-10865, 2025 WL 2938779, at \*3 (N.D. Ill. Oct. 16, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 292–93, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018)). Neither does § 1252(b)(9) strip courts of jurisdiction to determine whether agencies comply with federal law and their own regulations. *Mantena v. Johnson*, 809 F.3d 721, 728–29 (2d Cir. 2015); *Musunuru v. Lynch*, 831 F.3d 880, 887–88 (7th Cir. 2016); *Kurapati v. U.S. Bur. of Citizenship and Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009).
>
> \* \* \*
>
> Because Petitioner's claims relate to the lawfulness of his detention under § 1225 and his rights to a bond hearing or an individualized assessment under TVPRA, the Court's jurisdiction is not barred by § 1252(b)(9) or (g).

Case No. 3:26-CV-133, 2026 WL 456489, at \*\*2-3 (N.D. Ohio Feb. 18, 2026) (emphasis added).  *See also Hu v. Raycraft*, Case No. 4:26-cv-113, 2026 WL 539117, at \*\*2-5 (N.D. Ohio Feb. 26, 2026) (report and recommendation).

In his habeas Petition, Alberto-Alvarenga "challenges the legality and constitutionality of his prolonged civil immigration detention by" DHS.  (Doc. No. 1 at 1-2.)  As Alberto-Alvarenga makes clear in his Traverse, he "does not seek review of a credible-fear determination, asylum denial, or removal order."  (Doc. No. 10 at 4.)  Rather, "[h]e seeks constitutional review of detention."  (*Id.*)  Therefore, the Court concludes that subject-matter jurisdiction exists and will proceed to the merits of Alberto-Alvarenga's Petition.

## D.  Merits

Turning to the merits of Alberto-Alvarenga's Petition, Respondents first argue that Alberto-Alvarenga "is not entitled to release and is lawfully detained."  (Doc. No. 11 at 2.)  Respondents assert that Alberto-Alvarenga "is currently detained under § 1225(b)(1)(B)(iii)(IV)," which "authorizes Petitioner's

'mandatory detention,' from the date of the Immigration Judge's finding of no credible fear of persecution, December 29, 2025, until his removal."[8]  (*Id.*)

Under 8 U.S.C. § 1225, a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings*, 283 U.S. at 287.  There are two categories of applicants for admission described in Section 1225: "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id*.

Section 1225(b)(1) covers the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled."  8 U.S.C. § 1225(b)(1).  Respondents argue that this provision "authorizes mandatory detention pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." (Doc. No. 11 at 2) (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). But Section 1225(b) covers *inspections* and describes events occurring at the time the non-citizen arrives in this country. *See also* 8 U.S.C. § 1225(b)(1)(A) ("Screening"); § 1225(b)(1)(B) ("Asylum interviews"). The specific subsection that the Respondents rely on references *mandatory detention* in the context of an *asylum interview*, which is conducted by an *asylum officer* when the non-citizen arrives in the United States. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Here, there is no evidence showing that officers conducted an asylum interview with Alberto-Alvarenga when he arrived at the border.  (*See* Doc. No. 1-8 at 6.)  Alberto-Alvarenga did not apply for asylum until eight months after he arrived in this country. (Doc. No. 5 at 2.) Respondents therefore have not shown that Alberto-Alvarenga's detention is required under § 1225(b)(1).

---

[8] Respondents also maintain that "even considering Petitioner's original claims of illegal detention related to his arrest by local authorities for domestic violence, a decision to arrest, detain, and/or release under § 1226 is not subject to review," citing 8 U.S.C. § 1226(e). (Doc. No. 11 at 2-3.)  However, Respondents then continue, "*but see, e.g., Demore v. Kim*, 538 U.S. 510, 517 (2003)(§ 1226(e) does not preclude habeas review of constitutional challenge of statute authorizing detention without bail); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (finding that 8 U.S.C. § 1226(e) did not bar review in that case because the petitioner did not challenge 'his initial detention')."  (Doc. No. 11 at 3.)

While Respondents do not cite to § 1225(b)(2) as a basis for mandatory detention, out of an abundance of caution, the Court briefly addresses why this provision also does not apply to Alberto-Alvarenga.  The Court agrees with the well-reasoned decisions by this Court rejecting the application of mandatory detention under § 1225(b)(2) in similar cases.  *Hu*, 2026 WL 539117, at **6-8; *Remirez Moreno*, 2026 WL 496634, at **3-6; *Gonzalez Lopez*, 2025 WL 3280344, at **4-6; *Chavez v. Director of Detroit Field Office,* Case No. 4:25-cv-02061-SL, 2025 WL 3187080, at **3-8 (N.D. Ohio Nov. 14, 2025).  In the interest of judicial economy, the Court incorporates their reasoning by reference.  *Chavez v. Director of Detroit Field Office,* Case No. 4:25-cv-02061-SL, 2025 WL 2959617, at *6 (N.D. Ohio Oct. 20, 2025), *report and recommendation adopted as modified by* 2025 WL 3187080.

Under the plain text of Alberto-Alvarenga's Notice to Appear, Alberto-Alvarenga was passively present in the United States without being admitted or paroled—and nothing more. "[A]s an immigrant arrested and detained while 'already in the country[,]' *Jennings*, 583 U.S. at 289, [Alberto-Alvarenga] falls … within § 1226(a)'s default rule," *Chavez*, 2025 WL 3187080, at *4.  Section 1226(a) gives immigration judges broad discretion to permit or deny release on bond and "makes no distinction between admitted and unadmitted immigrants." *Chavez*, 2025 WL 3187080, at *5. The key is that Section 1226(a) makes discretionary bond available, rather than imposing mandatory detention.  Respondents have not explained to whom they think Section 1226(a) might apply, or why Alberto-Alvarenga would not fall under this section.

Because Alberto-Alvarenga should be considered for release on bond under §1226(a), the undersigned recommends the Court should grant his petition and order the immigration court to conduct a bond hearing.

21

Even if the Court finds that Alberto-Alvarenga is subject to mandatory detention under § 1225(b)(2), it should grant his petition and direct the immigration court to conduct a bond hearing under the Fifth Amendment Due Process Clause.  The Fifth Amendment right to due process applies to all persons, including noncitizens, who are present in the United States.  *Zadvydas*, 533 U.S. at 693.

Respondents argue that Alberto-Alvarenga is not entitled to a bond hearing because there has been "no prolonged detention."  (Doc. No. 11 at 5.)  However, the cases on which Respondents rely are not on point.  *Zadvydas* concerned detention after an alien receives a final order of removal.  533 U.S. at 682.  *Demore* concerned mandatory detention for certain criminal aliens.  538 U.S. at 513. Alberto-Alvarenga has not received a final order of removal and Respondents have not alleged that Alberto-Alvarenga meets the criteria of § 1226(c).

In addition, the merits of Alberto-Alvarenga's due process claim under the applicable balancing test justify relief. *See United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976)).  Under this test the Court weighs: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail.  *See Mathews*, 424 U.S. at 335.

First, Alberto-Alvarenga's liberty is at stake. Second, Respondents' position has been inconsistent. Alberto-Alvarenga was previously released and permitted to go about living for over nine years in the United States during the pendency of his immigration proceedings before being detained in October 2025. These contradictions tend to show that Alberto-Alvarenga is at risk of being erroneously deprived of his freedom. The second factor thus weighs in his favor.

Lastly, based on the information described throughout this recommendation and in the documentation attached to the pleadings, Respondents have not shown that they have any significant interest in Alberto-Alvarenga's continued detention.

For all the foregoing reasons, the undersigned recommends the Court GRANT Alberto-Alvarenga's Petition and ORDER Respondents to provide Alberto-Alvarenga with a bond hearing under 8. U.S.C. § 1226(a).

### V. Conclusion

For all the reasons set forth above, it is recommended that the Court GRANT the Motion to Substitute Proper Respondent (Doc. No. 15). It is further recommended that the Court GRANT Alberto-Alvarenga's Petition and ORDER Respondents to provide Alberto-Alvarenga with a bond hearing under 8. U.S.C. § 1226(a). Petitioner's Motion for Leave to File Sur-Reply (Doc. No. 12) is DENIED. Petitioner's Motion to Expedite and for Immediate Ruling (Doc. No. 13) is DENIED AS MOOT.

Date: March 4, 2026
*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**

23